INSTITUTO CUBANO DE ESTABILIZA-
CION DEL AZUCAR, Libelant-
Appellant,

v.

T/V GOLDEN WEST; Skibs A/S Golden
West, Respondent-Appellee.

No. 193, Docket 24267.

United States Court of Appeals
Second Circuit.

Argued Feb. 11, 1957.

Decided July 5, 1957.

Thacher, Proffitt, Prizer, Crawley &
Wood, New York City (John C. Crawley
and John J. Leibell, New York City, of
counsel), for appellant.

Pyne, Brush, Smith & Michelsen, New
York City (Dudley C. Smith, New York
City, of counsel), for appellee.

Before HINCKS, LUMBARD and
WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

On May 14, 1952 and May 16, 1952
the appellant delivered to the master of
the T/V Golden West at two Cuban ports
shipments of blackstrap molasses for
which the master issued three bills of
lading, signed by him, acknowledging re-
ceipt of the shipments to be delivered at
Albany, New York. Each bill of lading
contained the following:

"This shipment is carried under and pursuant to the terms of the Charter dated *April 17th—1952* at between *Transocean Shipping & Trading Company* and *Instituto Cubano de Estabilization del Azucar*, as Charterer, and all the terms whatsoever of the said Charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in the shipment."

(Italics denote typewritten inserts into blanks on printed Bill of Lading form.) Paragraph 26 of the charter-party of April 17, 1952, contained provisions for arbitration between the parties of "Any and all differences and disputes of whatsoever nature arising out of this Charter. * * *" and provided that "Either party hereto may call for such arbitration by service upon any officer of the other * * *"

On December 8, 1953, appellant filed its libel against the T/V Golden West and the respondent corporation, Skibs A/S Golden West, the owner of the T/V Golden West during May, 1952, alleging therein that upon discharge of the molasses at Albany on May 22, 1952, the shipments were approximately 300,107 lbs. short, to the damage of the libelant approximately $4,505.78, payment of which had been demanded and refused, and praying for an order compelling respondent to post security for the claim and to proceed to arbitrate.

As stated in the bills of lading, the libelant-appellant entered into a Charter party on April 17, 1952, with one Transocean Shipping & Trading Company, which Charter party contained provisions for arbitration. On the day libelant filed its libel, December 8, 1953, it also served its notice to arbitrate upon respondent at Oslo, naming its arbitrator. Respondent ignored both the libel and demand for arbitration until late in 1954 when security was posted, and appearance in defense of the libel was filed on December 22, 1954. Respondent continued to ignore libelant's request that it appoint an arbitrator.

The petition seeking that respondent be compelled to arbitrate was heard below and the Court found that at no time had the libelant and respondent entered into any Charter party for the hire of the T/V Golden West; that the vessel on May 29, 1949, had been chartered by Skibs A/S Golden West to one Overseas Commodex Corporation for three years and that this charter had been renewed on May 16, 1951, for a further period of three years and one and one-half months; and that under the terms of this Charter party the whole capacity of the Golden West was chartered to Overseas Commodex and the master of the vessel was to sign bills of lading as Overseas Commodex directed.

It also appeared that under an arrangement with the long-term charterer, Overseas, Transocean Shipping and Trading Company was a time-charterer of the vessel when, on April 17, 1952, the vessel was hired from Transocean by the libelant.

From these facts it is obvious that the respondent corporation never agreed to arbitrate any dispute of any kind with this libelant. It is equally obvious that the master of the T/V Golden West accepted the molasses, issued bills of lading therefor, and carried the cargo, all pursuant to the terms of a charter party between the libelant and Transocean Shipping & Trading Company, to which charter this respondent was not a party; but when the master signed the bills of lading the vessel owner became liable *in personam*, and the vessel liable *in rem*, in the event there should be any failure in the performance of the contract of carriage the bills of lading evidenced. Cf. The Schooner Freeman v. Buckingham, 1855, 18 How. 182, 59 U.S. 182, at page 190, 15 L.Ed. 341; The Alert, 2 Cir., 1895, 61 F. 113; The Themis, 2 Cir., 1921, 275 F. 254; The Carriage of Goods By Sea Act, 46 U.S.C.A. §§ 1300–1315, particularly § 1301(a), § 1301(b), § 1303 (2).

These three bills of lading evidenced contracts of carriage that included the content of the Charter between libelant

and Transocean, one of the provisions of which was that disputes between libelant and Transocean could be arbitrated if either party called for it and served a demand therefor upon the other. By serving its demand for arbitration not upon Transocean but upon respondent, and by filing its libel not against Transocean but against respondent to compel such arbitration libelant sought to substitute Skibs A/S Golden West for Transocean. Libelant's position apparently was that since it could sue Skibs A/S Golden West (unless libelant's claims be time-barred) and Skibs A/S Golden West would be liable to pay any recovery libelant might obtain for failure to perform the contract of carriage, Skibs A/S Golden West could be considered substituted for Transocean as a party to an arbitration proceeding the purpose of which would be to inquire into the same subject-matter.

■ The district judge denied the motion to compel Skibs A/S Golden West to proceed with arbitration. He held that such a substitution was unwarranted; for, although the bills of lading issued by the owner's master may have made the owner liable to the shipper for any shortage in the shipment upon delivery, the owner was not a party to any Charter incorporated in the bills of lading that provided for submission of shortage claims to arbitration. We affirm.

If the libelant desired to submit its claims of shortage to arbitration, it should have served its demand upon Transocean, with whom it had its arbitration agreement. The charter party incorporated into the contract for carriage evidenced by the bills of lading so provided and cannot be reasonably read to provide otherwise. We point out that the charter party incorporated into the contracts for carriage evidenced by the bills of lading issued to the shipper by the master of the Norita that were in suit in Son Shipping Co., Inc., v. DeFosse & Tanghe, 2 Cir., 1952, 199 F.2d 687, was a charter party the owner of the Norita had executed, and by which the *owner* had expressly agreed that disputes with the owner were arbitrable. Our decision here is not inconsistent with the holding there.

■ An order to compel arbitration having been denied to libelant, libelant then, despite the fact that its pleading showed on its face that the claim was time-barred,[1] sought recovery from respondent for failure to properly perform its contract for carriage. Respondent filed exceptions alleging the time-bar. The District Judge sustained the exceptions and dismissed the libel. We affirm this order. Libelant sought to avoid 46 U.S.C.A. § 1303(6) by maintaining that the charter between it and Transocean by which the whole capacity of the vessel was contracted for was a contract of private carriage rather than a contract of common carriage, and that recovery for a breach of that contract was not subject to the provisions of the Carriage of Goods by Sea Act. We see no merit whatever to this contention. As we have pointed out above, the only rights libelant may ever have had against this respondent are based upon the bills of lading. The Carriage of Goods by Sea Act controls the effect of "*every* bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade," 46 U.S. C.A. § 1300. (Emphasis added.)

The orders appealed from are affirmed.

---

1. The Carriage of Goods by Sea Act, U. S.C.A. Title 46, § 1303(6) provides: "* * * In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered: * * *"