**Terrence Lenon ELLIS,
Plaintiff–Appellant,**

v.

**CITY OF SAN DIEGO, CALIFORNIA; Mayor Susan Golding, San Diego Police Department; Jerry Sanders, Chief of Police; John Doe # 1; M. Shaw; Baines; D. Johnson; B. Hubble; D. Leach; L. McEuen; A. Linardi; Hartson Ambulance Company; John Doe # 2; University of California San Diego (U.C.S.D.) Medical Center; K.B. Van Hoesen; and Annette "Doe", Defendants–Appellees.**

**No. 97–55649.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Filed May 14, 1999.

As Amended on Denial of Rehearing June 23, 1999.

1184

**1186**

Terence Lenon Ellis, San Diego, California, in pro se, for the plaintiff-appellant.

Paul G. Edmonson, Deputy City Attorney, San Diego, California, and Thomas E. Lotz, Harrington, Foxx, Dubrow & Canter, San Diego, California, for the defendants-appellees.

Brian T. Hackley, Hack, Shaw & Hackley, San Diego, California, for appellee Hartson Medical Services.

Before: BRIGHT,* REINHARDT, and RYMER, Circuit Judges.

REINHARDT, Circuit Judge:

Terrence Ellis appeals from an order of the district court dismissing with prejudice his pro se complaint against various defendants for numerous civil rights violations and state-law intentional torts. His action stems from his arrest and a search of his body that occurred on September 11, 1993. Ellis's complaint alleges that he was arrested in his home without a warrant, that the officers used excessive force in effectuating his arrest and that, in conjunction with ambulance and hospital personnel, they violated his rights by restraining him, sedating him into unconsciousness, taking blood from his arms, and inserting a catheter into his penis to extract a urine sample against his will and over his objections. He further alleges that the defendants had no cause or justification for their actions and that they engaged in some of them "simply because he was on parole." The district court dismissed his complaint with prejudice after concluding that the action was barred by the statute of limitations.

Because the district court failed to apply the correct standards for tolling the statutes of limitations, we reverse as to Ellis's federal law claims against all defendants.[1]

Moreover, we conclude that the doctor who allegedly catheterized Ellis against his will is not protected by the tolling and claims provisions contained in California's Medical Injury Compensation Reform Act (MICRA) because the Act does not apply in whole or in part to federal civil rights actions. We decline to consider the doctor's argument, raised for the first time on appeal, that Ellis's action is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and we reject on the merits her request to dismiss on the basis of qualified immunity.

As to Ellis's state law claims against the ambulance company, a private entity, and its employees, we reverse the district court's dismissal with prejudice and remand with directions that Ellis be permitted to amend his complaint so as to state a claim. We affirm the district court's dismissal with prejudice of the state law claims against the other defendants, all of whom are public entities, officials, or employees because Ellis failed to meet the claims presentation requirements of California law.

## I. Facts

Because the district court granted the defendants' motion to dismiss, we recite the facts as they appear in the complaint. They are, at this point, of course, simply allegations. For purposes of this opinion, however, we must assume them to be true.

On September 11, 1993, Ellis was in his living room drinking a beer when three San Diego police officers arrived in response to a domestic disturbance call, entered his home and ordered him to put down his beer and come outside. Ellis told one of the officers that he was going to finish his beer, and attempted to keep drinking. At that point, one of the officers sprayed him with "pepper mace" while two others choked him and bent his arms back further than necessary, in order to inflict

---

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Ellis does not, however, challenge the district court's dismissal of his Ninth Amendment claim. Accordingly, the dismissal stands in that respect.

pain, while applying handcuffs. Once handcuffed, Ellis was led out of his home by the police and placed in the back of a squad car. After he was seated in the car, an officer said to Ellis, "your sister says, you do cocaine, do you shoot it, or just smoke it?" Ellis did not, of course, allege that his sister actually said this or anything like it to the police, or even that he heard any statement of any kind by her. Ellis responded only that he wanted to speak to a lawyer.

After Ellis had been held in the back of the squad car for approximately half an hour, he asked the police what was taking so long. He was told that the officers were investigating possible charges against him. Another half-hour later, an ambulance from defendant Hartson Ambulance Company ("Hartson") arrived, and Ellis was transferred, still handcuffed, to the ambulance by the police and the ambulance attendants. In the ambulance, he was "strapped down to a wheeled gurney," and on his arrival at University of California San Diego Medical Center, he was taken into an "operating area."

When he was unstrapped from the gurney, Ellis protested that he would not consent to any tests and began to struggle. The police and ambulance attendants then forcefully restrained him and tied him to the table. A nurse, "Annette Doe," entered the room, and Ellis informed her that he did not consent to any tests. The nurse began questioning him about his medical background. He refused to answer, and again protested that he did not consent to any tests or procedures. One of the officers told Ellis that "your (sic) a suspected drug addict, so we don't need your permission."

Annette then returned with a syringe. Ellis asked her not to inject him, but she ignored him and administered a tranquilizer. He was revived six hours later; his arms were "sore and had blood spots on them where the medical persons had taken

his blood." When he awoke, Ellis's pants and underpants were pulled down to his ankles and there was tubing in his penis, which had been inserted by Dr. Karen Van Hoesen ("Van Hoesen") while he was sedated. Nurse Annette then held Ellis's penis with her left hand and "snatched the tubing out of [his] penis with her right hand which caused [him] excruciating pain and caused [him] to urinate on himself." Eventually, Ellis was handcuffed and returned to the patrol car, where he was given his *Miranda* rights and told that he was charged with numerous offenses including being under the influence of a controlled substance.

At the time these events occurred, Ellis was on parole; thereafter his parole was revoked and he was reincarcerated. In a Declaration attached to his complaint, Ellis states that he "remained in custody" following the incident for almost two years. Seven months following his release, on April 29, 1996, Ellis brought suit against the City of San Diego, its mayor, its police department, eight police employees, The University of California at San Diego (U.C.S.D.), Van Hoesen, the nurse, and Hartson Ambulance and two of its employees. Ellis specifically alleges that Van Hoesen and the nurse are employees of either the University or the City of San Diego, and that all of the defendants acted under color of state law.

Ellis asserts numerous violations of his rights under the federal Constitution; he also alleges a number of state law claims that are essentially for intentional torts but are incorrectly pleaded as violations of the California Penal and Health and Safety Codes. He seeks declaratory and injunctive relief as well as $125,000,000 in damages.

■ On March 20, 1997, in response to motions to dismiss filed by most of the defendants, the district court dismissed all of Ellis's claims with prejudice as to all defendants.[2] The court found, correctly,

---

**2.** The two defendants who did not seek dismissal were U.C.S.D. and the nurse, Annette Doe. On February 14, 1997, in response to a

motion from Ellis complaining about lack of service, the district judge entered an Order declaring Ellis's concern about service to be

that the applicable statute of limitations for § 1983 claims is one year, borrowing the California statute of limitations for personal injury suits. The district court erred, however, in concluding that the California law tolling the statute of limitations on claims by incarcerated prisoners had been eliminated rather than limited to a period of two years. As a result, the district court erroneously found Ellis's claims time-barred. On March 24, Ellis, unaware that the court had already dismissed his case, filed a supplemental brief in opposition to one of the motions to dismiss, in which he argued, correctly, that the revised California tolling statute, in particular California Civil Procedure Code § 352.1, tolled the statute of limitations during his period of incarceration up to a maximum of two years.

Although the City defendants do not contest appellate jurisdiction, both Van Hoesen and Hartson contend that Ellis's appeal is untimely. Ellis, who was again in custody at the time he filed the appeal, asserts that on March 28, 1997, he gave a notice of appeal to the prison authorities for mailing. The clerk's record confirms that on March 29, 1997, he sent a notice of appeal to the district court with a letter requesting file-stamped copies. It is not clear what happened next, but evidently Ellis's notice was not filed promptly, and on April 10, 1997, he wrote to the clerk of this court, asking whether his notice of appeal had, in fact, been filed and enclosing another copy. That copy was forwarded to the district court, which filed it on April 16, 1997. Ellis's original notice of appeal later reappeared and was filed in the Clerk's Office on April 24, 1997.

## II. Standard of Review

■ We review de novo the district court's dismissal of Ellis's action on statute of limitations grounds. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 378 (9th Cir.1998) (citing *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996)). The district court's interpretation of California state law is also reviewed de novo; our goal is to ascertain and apply California law. *Id.*

## III. Appellate Jurisdiction

■ There are two reasons that Ellis's notice of appeal was timely; one is factual, the other legal. First, on April 16, 1997, well within the 30 day appeal period, the district court Clerk's Office filed the copy of Ellis's notice of appeal that was forwarded by the clerk of this court. Second, even if for some reason Ellis's filing with the court had been deficient, his notice of appeal was deemed filed when he gave it to the prison authorities on March 28, 1997. Fed. R.App. P. 4 (1993); *accord, Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that pro se prisoner's notice of appeal was timely filed when it was delivered to prison authorities for filing). Because Ellis's notice of appeal was timely filed, we have jurisdiction.

## IV. Tolling During Incarceration

■ Section 1983 and most related federal civil rights statutes have no independent statute of limitations. Instead, the applicable limitation period is determined by borrowing the forum state's limitation period, including its tolling provisions, for the most analogous personal injuries. *Wilson v. Garcia*, 471 U.S. 261,

moot because "the Marshal's Office has served plaintiff's complaint and summons upon all of the defendants." U.C.S.D. was not, however, served until April 2, 1997, after Ellis's suit had already been dismissed with prejudice. It is not clear from the record when or whether Annette Doe was served. It appears that Ellis's state law claims against both U.C.S.D. and nurse Doe would in any event be barred under the claims presentation provision discussed *infra*. Furthermore,

U.C.S.D., as a subdivision of the State of California, is immune from damages under § 1983 and thus should be dismissed from the action. However, Annette Doe, as a state employee sued in her individual capacity enjoys no such protection. On remand, the district court should determine the status of Ellis's claims against these two defendants and make whatever determinations may be appropriate and consistent with this opinion.

279, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).[3] In California, the limitation period is one year. *See Cabrera,* 159 F.3d at 377; *Usher v. City of Los Angeles,* 828 F.2d 556, 558 (9th Cir.1987).

■ When Ellis was arrested on September 12, 1993, California law provided for unlimited tolling during incarceration. The law was subsequently changed effective January 1, 1995, to limit the period of tolling. The revised statute provides:

> (a) If a person entitled to bring an action ... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal.Civ.Proc.Code § 352.1 (West 1994). Section 352.1 contains two additional subsections regarding tolling for prisoners. Subsection (b) provides that there is no tolling of claims presentation requirements for state-law tort claims against public entities or employees, and subsection (c) limits tolling for suits challenging "conditions of confinement" to claims for monetary damages.[4] The district court correctly noted that the former tolling provision had been repealed, but did not note that a new section had been enacted to replace it. On this basis, the district court concluded that California law "was amended to eliminate any tolling provisions for prisoners."

The revised statute limiting tolling to two years did not serve to shorten the period of tolling in this case.[5] Ellis was incarcerated from September 12, 1993 to September 7, 1995, a period of less than two years. Under the amended law, the statute of limitations was tolled during that period. Ellis then had one year from his release date, or until September 7, 1996, to bring an action for violation of his federal rights stemming from the events of September 11, 1993. This action was filed on April 29, 1996; thus, it was timely.

■ In addition to the federal civil rights claims, Ellis also alleged violations of 16 sections of the California Penal Code and one violation of the California Health and Safety Code. Because these code sections do not create enforceable individual rights, the district court properly dismissed the claims. The district court went

3. An exception to this rule exists with respect to 42 U.S.C. § 1986. That section contains an explicit one-year statute of limitations, and is subject to the federal equitable tolling doctrine. *Donoghue v. County of Orange,* 848 F.2d 926, 929 (9th Cir.1987). Equitable tolling of the statute of limitations is a defense to all federal statutes of limitations, even those expressly contained within a given cause of action, unless tolling would be inconsistent with the legislative purpose. *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 557, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 527 (9th Cir.1981). There is no evidence that Congress intended to disallow equitable tolling of civil rights claims, and as this court noted in *Donoghue,* "there is no federal policy underlying the federal [Civil Rights Act] claims which is inconsistent" with tolling. Thus, Ellis's § 1986 claim was subject to equitable tolling.

4. Van Hoesen contends that because Ellis was restrained by his arrest that he was "confined" and that therefore this is a suit challenging the "conditions of confinement." In the alternative, Van Hoesen contends that the rights of parolees are identical to those of prisoners. Both arguments are without merit. Ellis's suit challenges not the conditions of confinement but the conditions of *arrest.* Van Hoesen cites no authority for her contention that parolees complaining of excessive force or warrantless arrests are actually complaining of the conditions of their "confinement" on parole, and, understandably, there is none.

5. The amended statute took effect after Ellis's cause of action accrued but during his period of incarceration. We need not reach the question whether the law may be applied retroactively, because Ellis's total period of incarceration was less than two years. He is therefore entitled to an identical amount of tolling under both the old and new versions of the statute.

further than permissible, however, in dismissing with prejudice the claims against Hartson and its employees on the ground that the statute of limitations had run. Because, as we have discussed, the limitations period was tolled during Ellis's imprisonment, the dismissal should have been without prejudice so that Ellis could have had the opportunity to attempt to state claims for state torts such as false imprisonment, battery, or negligent and intentional infliction of emotional distress.

■ However, we affirm the district court's dismissal with prejudice of Ellis's state law claims against the various public entities and employees because even if the claims were amended they would still be time-barred. As noted above, § 352.1(b) limits the tolling provisions of subsection (a) so that they do not apply to any "action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with ... the Government Code." This provision was also contained in the prior version of the law in § 352(b). Cal. Government Code § 911.2 sets the time period for the presentation of a claim relating to death or personal injury at six months. Applications for an extension of time to file a late claim may be made within one year after the accrual of the injury; however, there is no discretion to grant applications made after that date. See Cal. Gov't Code § 911.4 (West 1995); *Santee v. Santa Clara County Office of Educ.*, 220 Cal. App.3d 702, 713, 269 Cal.Rptr. 605 (1990). Ellis did not file his claim until September 12, 1995, more than 18 months late. He did not file his application for leave to file a late claim until more than two years after the incident. Therefore, the dismissal with prejudice of Ellis's state law claims against the public entities (City of San Diego, San Diego Police Department, U.C.S.D.) and public employees (Mayor Golding, police officers, Dr. Van Hoesen, and Annette Doe) is affirmed.

## V. MICRA and § 1983

■ Van Hoesen asserts that a California statute commonly known as MICRA is applicable to all of Ellis's claims against her and that the statutory tolling provisions do not apply in MICRA cases. MICRA governs "action[s] for injury or death against a health care provider based upon such person's alleged professional negligence ..." Cal. Civ. Proc. Code § 340.5 (West 1982). According to the California Supreme Court, MICRA applies only when the injury is "directly related to the manner in which professional services were provided." *Central Pathology v. Superior Court*, 3 Cal.4th 181, 192, 10 Cal.Rptr.2d 208, 832 P.2d 924 (1992).

Van Hoesen argues that because the definition of "professional negligence" includes acts of medical malpractice that amount to intentional torts, such as amputating the wrong limb or inserting a Dalkon Shield, it should also include constitutional torts. This argument has some superficial appeal: after all, Van Hoesen is a doctor and catheterization is, under some circumstances, a medical procedure.

The relevant distinction, however, lies in the purpose for which the procedure is performed. Although in his opposition to her Motion to Dismiss, Ellis asserted that Van Hoesen's conduct was professionally negligent, the gravamen of his complaint is not malpractice but the violation of his constitutional rights. In the cases cited by Van Hoesen, the doctor is acting in his capacity as a medical care provider, albeit perhaps incompetently. By contrast, Ellis's complaint alleges that Van Hoesen acted in an entirely different capacity-that of a law enforcement agent looking for evidence of a crime. Under the facts as alleged, the catheter is more like an eavesdropping device than a Dalkon shield, and Dr. Van Hoesen is more like a police agent than a doctor.

■ Furthermore, the legislative history of MICRA makes clear that the California legislature intended to protect doctors from medical malpractice suits and "there was no intent to protect practitioners in any other capacity." *Id.* at 929 (quoting

Assembly Subcomm. on the Admin. of Justice Rep. on S.B. No. 1420, at 1 (1987–88)). Ellis is suing Van Hoesen not for incorrectly inserting the catheter or needle while treating him, but for searching his bladder and bloodstream without a warrant or probable cause, and for using excessive force while doing so. Van Hoesen is therefore not being sued for the manner in which she performed *medical services* or *treatment*, but because of her assumption of the function of a law enforcement official; MICRA does not protect her with respect to the latter form of conduct. Thus the regular tolling provisions remain applicable with respect to Van Hoesen. MICRA simply has no application to suits for violations of federal constitutional rights pursuant to 42 U.S.C. § 1983.

Van Hoesen also claims that, under MICRA, Ellis's complaint must be dismissed because he failed to notify her of his intention to sue at least 90 days before he filed his lawsuit. As set forth above, MICRA has no application here. Moreover, this contention is without merit for an additional reason. A civil rights plaintiff cannot be required by state law to give a prospective defendant "notice" of an intention to sue because § 1983, which exists to vindicate important federally created rights, preempts state notice-of-claim statutes. *Felder v. Casey*, 487 U.S. 131, 153, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). All state notice of claim statutes are preempted, whether contained in MICRA or elsewhere. *Id.*[6]

## VI. Qualified Immunity

Both Hartson and Van Hoesen asserted below and on appeal that they are entitled to qualified immunity, and argue that this provides an alternative basis for affirming the district court's order. Hartson is a private company, and would not be entitled to qualified immunity even if the state actors were. *See Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).[7]

In determining Van Hoesen's claim of qualified immunity, we consider whether Ellis has alleged that Van Hoesen acted unreasonably to deprive him of a clearly-established constitutional right, taking the allegations in his complaint as true, and considering all reasonable inferences from the alleged facts. *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1713 n. 5, 140 L.Ed.2d 1043 (1998). Ellis alleged that Van Hoesen, in conjunction with others, physically restrained him, tied him to a table, drugged him into unconsciousness, and forcibly extracted both blood and urine samples by inserting a needle into his skin and a plastic tube into his penis. He also complains that all these acts were done without any cause or justification and in a manner that was designed to, and did, inflict pain and injury.

It was clearly established when Ellis was arrested in September, 1995, that blood and urine tests are searches subject to the constraints of the Fourth Amendment, *Schmerber v. California*, 384 U.S. 757, 766, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and that warrantless compulsory

6. We exercise our discretion to resolve this issue even though it was not raised below because it presents a pure question of law and the opposing party, here Ellis, is not prejudiced by our doing so. *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990). We choose not to resolve, however, another issue that Van Hoesen now raises for the first time. She suggests that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) bars Ellis's suit. *Given some of the complex issues such an argument presents, and the fact that it was not explored at oral argument, we*

choose not to consider it here. *See Carlson,* 900 F.2d at 1349.

7. The police officers, represented by the City attorney, asserted no immunities, and thus, we do not consider whether they would be entitled to immunity for their conduct. Similarly, the City of San Diego did not move to dismiss Ellis's complaint for money damages against the city for failing to state a claim for municipal liability under *Monell v. Dept. of Soc. Servs. of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

blood tests are unreasonable unless supported by both probable cause and exigent circumstances. *Id.* at 768–770, 86 S.Ct. 1826. It was furthermore clearly established at that time that even if the search meets these criteria, it is still unreasonable if the degree of force employed to carry it out is excessive. *United States v. Cameron*, 538 F.2d 254, 257 (9th Cir.1976) (per Kennedy, J.) (compelled enemas violate fourth amendment because "a clear indication that the suspect is concealing contraband does not authorize government officials to go to any and all means at their disposal to retrieve it."). Moreover, the forceful use of a catheter is a "gross personal indignity" far exceeding that involved in a simple blood test. *Yanez v. Romero*, 619 F.2d 851 (10th Cir.1980).

 Given Ellis's allegations regarding the absence of any basis for the body search and his contentions regarding the use of excessive force, Van Hoesen is not entitled to qualified immunity at this time.[8] We do not consider whether she might be able to successfully assert qualified immunity later in the proceedings; at this point, however, there is nothing in the record to support her claim.

### Conclusion

We reverse the dismissal of Ellis's federal civil rights claims (other than his Ninth Amendment claim) and remand to the district court for further proceedings consistent with this opinion. We affirm the dismissal of Ellis's state law claims against all of the defendants except Hartson and its employees. As to those defendants, we remand with instructions that the district court's order of dismissal be entered without prejudice.

The order of the district court dismissing Ellis's claims with prejudice is REVERSED IN PART, AFFIRMED IN PART, AND REMANDED for further proceedings consistent with this opinion.

RYMER, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority's resolution of the statute of limitations question, I dissent from Parts V and VI, which reach the MICRA and qualified immunity issues. Van Hoesen raises the MICRA issue for the first time on appeal, and the district court did not reach the qualified immunity issue. The record is unclear as to whether Ellis is alleging (or can show) that his injuries were related to Van Hoesen's provision of medical services or to her assumption of the function of a law enforcement official, or both. This could make a difference to proper resolution of both questions. Under these circumstances, we should decline to interpret MICRA and to decide qualified immunity until the record is more fully developed and the district court has had an opportunity to make the necessary factual findings.

---

8. Ellis's status as a parolee does not affect our conclusion. See *Portillo v. United States District Court for the District of Arizona*, 15 F.3d 819, 823 (9th Cir.1994) (holding that parolees cannot be subjected to nonrandom compulsory urine testing without reasonable individualized suspicion). Nor does Van Hoesen's argument that she should not be liable because she relied in good faith on the police officers' "good faith" and "law enforcement expertise" and that she was "unaware of the law in this area." Subjective good faith is irrelevant to the determination of qualified immunity, in which we apply an objective standard. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).