**UNDERWOOD COTTON COMPANY, INC., Plaintiff–Appellant,**

v.

**HYUNDAI MERCHANT MARINE (AMERICA), INC.; Hyundai Merchant Marine Co., Ltd., Defendants–Appellees.**

No. 01–55677.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2002

Filed April 26, 2002.

Kenneth F. Matteld, Los Angeles, California, (argued); Geoffrey W. Gill, Arter &

Hadden, LLP, Los Angeles, CA, for the plaintiff-appellant.

David R. Woolley, Woolley & Russell, Long Beach, CA, for the defendants-appellees.

Before: FERNANDEZ and RAWLINSON, Circuit Judges, and REED,* District Judge.

Opinion by Judge FERNANDEZ; Concurrence by Judge REED.

FERNANDEZ, Circuit Judge.

Underwood Cotton Company, Inc., brought this action against Hyundai Merchant Marine (America), Inc., and Hyundai Merchant Marine Co., Ltd. (collectively Hyundai). The district court granted Hyundai judgment on the pleadings[1] on the basis that the Carriage of Goods by Sea Act (COGSA)[2] applied and its provisions barred Underwood's action based upon the Federal Bill of Lading Act (Pomerene Act)[3] because this action was not commenced "within one year after delivery of the goods or the date when the goods should have been delivered."[4]

## BACKGROUND

Underwood brought this action and alleged that it had sold cotton to Cosan

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. See Fed.R.Civ.P. 12(c).

2. 46 U.S.C. app. §§ 1300–1315.

3. 49 U.S.C. §§ 80101–80116. This is actually a recodification, without substantive change, of the old Pomerene Act, which formerly appeared at 49 U.S.C. §§ 81–124 and to which

COGSA itself still refers. See 46 U.S.C. app. § 1303(4). We have continued to call it the Pomerene Act, see Yang Ming Marine Transport Corp. v. Okamoto Freighters Ltd., 259 F.3d 1086, 1097 (9th Cir.2001), and out of historical deference we will do so in this opinion.

4. 46 U.S.C. app. § 1303(6) (sometimes hereafter referred to as COGSA § 1303(6)).

U.S.A. Supply Co., Inc. Thereafter, Underwood delivered the cotton to Hyundai, which was to ship the cotton from Texas to Taiwan. Hyundai agreed that it would issue bills of lading for the cargo, and when Underwood presented those, Cosan was to pay for the cotton. However, after Underwood delivered the goods to Hyundai on January 7, 1998, Hyundai gave receipts to Underwood, but then issued the bills of lading to Cosan. Underwood protested, notified Hyundai that it was the true owner of the cotton, and demanded that Hyundai refrain from delivering the cotton to Cosan. Hyundai ignored those protestations, carried the cargo over the sea to Taiwan, and on February 28, 1998, delivered the cotton to Cosan's consignee. Cosan never paid for the cotton.

Underwood was understandably outraged, but it did not bring its action until February 25, 2000. After answering the first amended complaint, Hyundai moved for judgment on the pleadings on the basis that the action had not been brought within one year of delivery of the goods to Cosan. *See* COGSA § 1303(6). The district court agreed with Hyundai and dismissed the action. This appeal followed.

### STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

■ We review the district court's dismissal of the complaint upon a motion for judgment on the pleadings de novo. *See Arrington v. Wong,* 237 F.3d 1066, 1069 (9th Cir.2001). By the same token, when the decision is based on statute of limitations grounds, we review that de novo. *See Ellis v. City of San Diego,* 176 F.3d 1183, 1188 (9th Cir.1999). We also

review the district court's interpretation of a federal statute de novo. *See Silver Sage Partners, Ltd. v. City of. Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir.2001).

### DISCUSSION

■ This is not really a case about the merits of Underwood's claims against Hyundai; it is a case about the timing of the commencement of the action. The question is whether COGSA's one year period for bringing an action applies to Underwood's claim that Hyundai improperly issued a bill of lading and then delivered the goods to the holder of that document.

■ As we approach this question, we must reconcile two COGSA provisions that, at first blush, might seem to be irreconcilable. COGSA declares that "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter." 46 U.S.C. app. § 1300. But it also declares that "nothing in this chapter shall be construed as repealing or limiting the application of any part of sections 81 to 124 of Title 49 [the Pomerene Act]." 46 U.S.C. app. § 1303(4). Is this really a case of statutory antinomy? Were we to read § 1303(4) as broadly as Underwood would like, it would seem to be. Indeed, we would be presented with a peculiar vista in which COGSA could have nothing substantial whatsoever to say about rights flowing from or connected to a bill of lading on outgoing shipments. All rights and duties would depend on only the Pomerene Act because a transaction covered by a bill of lading could not really be subjected to any of the restrictive provisions of COGSA.[5] Surely, Congress did

**5.** We have, of course, recognized that COGSA does apply to bills of lading involving ocean

not intend that result, so we must look further.

When we do, it seems apparent that the proviso simply seeks to give the Pomerene Act priority in case there is some direct conflict that might tend to dilute its provisions. But there is no risk of that here. Its provisions retain their full strength, and COGSA simply sets forth a time within which an action against the ocean carrier must be commenced, if those provisions are to be enforced. In other words, no part of the Pomerene Act is repealed, and application of its terms is not limited. What is limited is the time to assert that Act in court. That said, we must digress.

The time bar provisions in COGSA state that: "[i]n any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." COGSA § 1303(6). Hyundai asserts that this is a statute of repose. In some ways it does read like one because it speaks of discharge of liability of the carrier rather than as a restriction on the commencement of an action to recover. *Cf., e.g.,* 28 U.S.C. § 1658 ("[A] civil action ... may not be commenced later than 4 years after the cause of action accrues."). On the other hand, it has a very short fuse, and one typically expects to see a longer period in true statutes of repose. *See, e.g.,* General Aviation Revitalization Act of 1994, Pub.L. No. 103–298, § 2(a)(1), 108 Stat. 1552 (1994) (provisions found at 49 U.S.C.

§ 40101 notes) (18 years). Moreover, in some sense COGSA, like a statute of limitations, appears to key on the date when the harm in question was inflicted (the delivery of damaged goods or the failure to deliver goods) as opposed to a more neutral date, like the date of sale of a manufactured item, which could have occurred long before any cause of action could even possibly have accrued. *See id.*

■ If COGSA § 1303(6) is a mere statute of limitations, it would seem more clear that it does not repeal or limit any part of the Pomerene Act because, in theory, a statute of limitations does not take away rights, as such. Rather, it merely precludes the plaintiff from proceeding, if the statute of limitations defense is raised. It can be said that, although the plaintiff was not diligent enough, the right (moral or legal) goes on, but the plaintiff simply cannot go to court in order to enforce it. *See, e.g., Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 313–16, 65 S.Ct. 1137, 1142–43, 89 L.Ed. 1628 (1945); *Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 181 F.3d 1142, 1145–46 (9th Cir.1999). A statute of repose, however, has a more substantive effect[6] because it can bar a suit even before the cause of action could have accrued, or, for that matter, retroactively after the cause of action has accrued. *See Lyon v. Agusta S.P.A.,* 252 F.3d 1078, 1084–85 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002). In proper circumstances, it can be said to destroy the right itself. *See Wil-*

---

transport to or from United States ports. *See Sea–Land Serv. Inc. v. Lozen Int'l LLC,* 285 F.3d 808, 816–17 (9th Cir.2002). It should also be noted that each of the COGSA defenses at 46 U.S.C. app. § 1304 can have the effect of limiting the reach of some right that a holder of a bill of lading might otherwise have.

6. The COGSA time limitation has been called substantive, although perhaps in a different sense. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 535, 115 S.Ct. 2322, 2327, 132 L.Ed.2d 462 (1995). Moreover, it has been said to resemble a statute of repose. *Servicios–Expoarma, C.A., v. Indus. Maritime Carriers, Inc.,* 135 F.3d 984, 988–89 (5th Cir.1998).

*liam Danzer & Co. v. Gulf & S.I.R. Co.,* 268 U.S. 633, 637, 45 S.Ct. 612, 613, 69 L.Ed. 1126 (1925). It is not concerned with the plaintiff's diligence; it is concerned with the defendant's peace. *See Lyon,* 252 F.3d at 1084.[7] In other words, a statute of repose can be said to have a greater theoretical effect upon rights affected by it. We, however, see no need to resolve the question of whether COGSA § 1303(6) is a statute of limitations or a statute of repose because the sometimes arcane distinctions between the two make no difference in this case.

We, instead, agree that COGSA § 1303(6), like any other statute of limitation or repose, would have the effect of limiting a party's rights under the Pomerene Act in the sense that after the passage of time, they will be unenforceable. Still, it is difficult to believe that Congress wished to leave the enforcement of rights under that Act subject to no time limits whatsoever. That is especially difficult to accept in the fast moving area of international trade, where certainty and finality have a very high priority. Beyond that, we can read and reread the Pomerene Act without finding any specific provision that COGSA § 1303(6) can be said to repeal, or even conflict with, and Congress did not suggest that limitation of the time during which an action touching the Pomerene Act could be brought was its concern when it enacted the proviso. On the contrary, perusal of the legislative history which touches on the proviso demonstrates that Congress's real concern was to assure that COGSA would not, somehow, dilute a carrier's liability for what it placed on the bill of lading when issuing it. The Pomerene Act was at great pains to eliminate the wrongs that could be perpetrated if carriers were not bound to the terms of the bills of lading they issued, and Congress did not wish to see holes picked in the shield that Act had created. *See Portland Fish Co. v. States S.S. Co.,* 510 F.2d 628, 632 nn. 8–9 (9th Cir.1974). COGSA's one year time limitation picks no such hole.

■ Moreover, we would perceive very little virtue in a system wherein many claims against carriers and related to ocean bills of lading (for example, failure to deliver the quantity or quality of listed goods) would be subject to COGSA § 1303(6), while some undefined group of other claims would be subject to some as yet unknown statute of limitations. Such a system would be cacophonous rather than canorous. We, therefore, accept a more harmonious reading that does apply COGSA § 1303(6) to the Pomerene Act in accordance with the declaration in 46 U.S.C. app. § 1300.

The propriety of this reading is underscored by the fact that we have simply and commonsensically applied COGSA § 1303(6) to an ocean bill of lading without, apparently, giving it a second thought. In *Western Gear Corp. v. States Marine Lines, Inc.,* 362 F.2d 328 (9th Cir.1966), goods were shipped from Seattle, Washington under an ocean bill of lading, but were not delivered pursuant to that bill because the goods had been washed overboard in transit. *Id.* at 329. They were recovered, repaired and delivered by a different vessel under a later bill of lading. *Id.* We held that the action against the first shipper was barred by COGSA

---

**7.** It is also true that the legislature can remove a statute of limitations impediment retroactively. *See Chase Sec. Corp.,* 325 U.S. at 315–16, 65 S.Ct. at 1143. However, that may even be true of a statute of repose in proper circumstances. *See id.* at 312 n. 8, 65 S.Ct. at 1141 n. 8; *Shadburne–Vinton v. Dalkon Shield Claimants Trust,* 60 F.3d 1071, 1074–77 (4th Cir.1995); *Wesley Theological Seminary of the United Methodist Church v. United States Gypsum Co.,* 876 F.2d 119, 121–23 (D.C.Cir. 1989).

§ 1303(6). *Id.* at 331. That was true, even though the Pomerene Act requires the carrier to deliver goods covered by a bill of lading upon demand by the holder thereof. *See* 49 U.S.C. § 80110; *see also Servicios–Expoarma*, 135 F.3d at 986–87. It is also worth noting that many cases have applied COGSA § 1303(6) to bill of lading cases involving shipments from foreign ports. *See, e.g., Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 659–61 (1st Cir.1990) (goods delivered without obtaining bill of lading from recipient, *cf.* 49 U.S.C. §§ 80110–80111); *Instituto Cubano de Estabilizacion del Azucar v. T/V Golden W.*, 246 F.2d 802, 803–04 (2d Cir.1957) (goods short of listing on bill of lading, *cf.* 49 U.S.C. § 80113(a)); *William H. McGee & Co. v. M/V Ming Plenty*, 164 F.R.D. 601, 606–07 (S.D.N.Y.1995); *Am. Hoesch, Inc. v. The S.S. Aubade*, 316 F.Supp. 1193, 1194 (D.S.C.1970); *Givaudan Delawanna, Inc. v. The Blijdendijk*, 91 F.Supp. 663, 667 (S.D.N.Y.1950); *Potter v. N. German Lloyd*, 50 F.Supp. 173, 173–74 (N.D.Cal.1943). It would be rather singular if COGSA § 1303(6) applied in all of these situations, but not to outgoing bills of lading. Thus, our determination here does syncretize 46 U.S.C. app. §§ 1300 and 1303(4), while properly dovetailing COGSA with the Pomerene Act.

Finally, there is nothing about this reconciliation of COGSA's provisions that will impair the negotiability of bills of lading themselves or otherwise undermine the Pomerene Act's central concerns. Nothing will tend to undercut the requirement that the carrier is responsible for what it puts on the bill of lading. Rather, there is simply a requirement that an action to enforce whatever rights the shipper might have against the carrier be brought within a time certain. All parties can look to a single filing period as far as a claim against an ocean carrier is concerned, whether that claim is for failure to issue a proper bill of lading, or for damage to the goods, or loss thereof, or asserted improper discharge thereof, or misdelivery, or whatever. Far from creating uncertainty, that results in an easily knowable regime. Thus, it helps to assure the smooth trade relations that both COGSA and the Pomerene Act were designed to foster.

In so holding, we do not overlook Underwood's assertion that it should not be bound by COGSA because it did not receive the bill of lading in the first place, although it should have. However, that makes little difference here and does not affect our conclusion. The simple fact is that Underwood does assert rights pursuant to the law that surrounds bills of lading, and where ocean carriage and an action against the carrier are concerned, that includes the effect of COGSA. Surely Underwood was not misled in that respect. It was well aware of the nature of the transaction in question, and cannot use the misissuance of the bill of lading (if it was misissued) and the misdelivery of the goods (if they were misdelivered) as a way of evading the effect of COGSA. *See Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 962 F.2d 276, 277, 279 (2d Cir.1992). That is to say, because Underwood is undeniably suing pursuant to the Pomerene Act itself, it cannot simultaneously argue that COGSA's filing period should not apply in this instance.[8]

---

**8.** Underwood also seeks to raise two new issues on appeal: a so-called tackle-to-tackle issue and an intentional misdelivery issue. It cannot do so. *See Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716, 718 n. 3 (9th Cir.), *cert. denied, Welty v. United States*, — U.S. ——, 122 S.Ct. 215, 151 L.Ed.2d 153 (2001) ("we decline to allow [the government] to raise the issue for the first time on appeal."); *Crawford v. Lungren*, 96 F.3d 380, 389 n. 6 (9th Cir.1996) ("The district court is not merely a way station through which par-

## CONCLUSION

■ We hold that the COGSA § 1303(6) one year period to bring an action against a carrier does apply to claims under the Pomerene Act when those are with regard to a bill of lading issued for the carriage of goods by sea.

While we recognize that our conclusion is not apodictic, we are of the opinion that it makes a great deal of sense, and we would truly find ourselves in the midst of a dilemma were we to search for an inexorably logical solution in this instance. Here, after asking ourselves about the effect of various approaches, we must settle for a solution that is somewhat more heuristic, but nonetheless compelling in the long run. If COGSA and the Pomerene Act seem to present a Gordian knot when they are laced together, rigorous logic alone is not the only way to untie it. Rather, in this case logic is complemented by history, good sense, and the need for a workable commercial answer. In fine, by applying COGSA § 1303(6)'s one year period, we implement congressional intent in the most reasonable way.

AFFIRMED.

REED, District Judge, concurring in the judgment.

I respectfully concur in the result. I write separately because it is my view that simply by applying canons of statutory construction we can arrive at the conclusion that COGSA's proviso against "repealing" or "limiting" the Pomerene Act does not preclude application of its one year time bar to Underwood's claims.

The issue we confront is whether COGSA's one year statute of limitations can be applied to a Pomerene Act claim in light of the express proviso in COGSA that it is not meant to limit application of the Pomerene Act. COGSA applies to "every bill of lading" which is "evidence of a contract for the carriage of goods by sea." 46 U.S.C. app. § 1300. It contains a one year statute of limitations period. *Id.* § 1303(6). COGSA also expressly states that "nothing in this chapter shall be construed as repealing or limiting the application of any part of sections 81 to 124 of Title 49." [1] *Id.* § 1303(4). The Pomerene Act contains no time bar.

Recognizing that COGSA sections 1300, 1303(4) and 1303(6) are somewhat at odds, the majority then proceeds to discuss: whether section 1303(6) is a statute of repose or a statute of limitations; what a perusal of the legislative history reveals; and other policy implications in order to determine that COGSA section 1303(4) must be construed narrowly and not limit the application of its statute of limitations to a claim, even if that claim is brought solely under the Pomerene Act. While I agree with the majority's ultimate conclusion, I remain unconvinced that interpreting COGSA's proviso in section 1303(4) broadly to say that the Pomerene Act stands not in the shadow of COGSA, but on equal footing beside it, would create the disharmony in the shipping trade that the majority fears.[2] Rather than engage in

ties pass by arguing one issue while holding back a host of others for appeal.")

**1.** As the majority notes, this reference in COGSA is to the Pomerene Act, originally codified at 49 U.S.C. §§ 81–124. In 1994, Congress recodified the act at 49 U.S.C. §§ 80101–80116. Although it was also re-

named, we continue to call it the "Pomerene Act."

**2.** It may appear that reading the proviso to except a Pomerene Act claim from any COGSA provision that limits it could be dangerous in that it could permit a party to assert a Pomerene Act claim free from COGSA's numerous restrictions and defenses. The class

these discussions, it is my belief that the analysis begins and ends with application of general rules of statutory construction. We need look no further.

Our analysis under general rules of statutory construction begins with "the language of the statute." *Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). When interpreting the statutory text, we "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme." *Id.* at 145, 116 S.Ct. 501. Where the plain language of a statute is ambiguous, a court may go beyond the words of the statute and examine the legislative history that may explain or elucidate it. *United States v. Davidson*, 246 F.3d 1240, 1246 (9th Cir.2001). In examining the legislative history of a statute, however, our function is to determine the intent of the legislature, "not to rewrite the statute based on our notions of appropriate policy." *Id.* (citations omitted).

We begin, then, with a look at COGSA section 1303(4). When viewed in isolation, the phrase that nothing in COGSA "shall be construed as repealing or limiting the application of any part of sections 81 to 124 of Title 49" seems to unquestionably indicate that nothing in COGSA should limit the effect of any part of the Pomerene Act (formerly 49 U.S.C. §§ 81–124). Even the majority admits that the one year time bar "would have the effect of limiting a party's rights under the Pomerene Act...." Were we to look solely at the language, it is difficult to escape the con-

clusion that the one year statute of limitations under COGSA would limit a claim under the Pomerene Act because, under the Pomerene Act, no such limit exists.

Rules of statutory construction, however, allow us to look further to the purpose and placement of the text. *See Davidson,* 246 F.3d at 1246. When we do so, the scope of the proviso becomes less clear. Section 1303(4) is entitled "bill as prima facie evidence" and is part of COGSA section 1303, where the responsibilities of the carrier are spelled out. The entire section reads:

> Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs (3)(a), (b), and (c), of this section: *Provided,* That nothing in this chapter shall be construed as repealing or limiting the application of any part of sections 81 to 124 of Title 49.

46 U.S.C. app. § 1303(4) (emphasis in original).

Thus, on one hand, the proviso states that COGSA is not meant to affect the application of *any* section of the Pomerene Act. On the other hand, that it appears as a clause, qualifying a specific COGSA provision regarding the evidentiary value of a bill of lading, casts doubt as to whether Congress intended it to uniformly except a Pomerene Act claim from any and all of COGSA's limitations or whether it was meant to merely preserve the Pomerene Act with respect to the clause under which it was placed in section 1303(4).

---

of claims subject to this danger, however, would not be "undefined" as the requirements for bringing a Pomerene Act claim are well-settled. *See* 49 U.S.C. §§ 80101–80116. Moreover, should such an interpretation result in undermining COGSA's force detrimentally, I have every confidence Congress would rectify the situation. Finally, it is common practice for carriers to expressly incorporate

all of COGSA's strictures in bills of lading. The widespread use, validity and enforceability of such clauses assuages any apprehension that carriers will face uncertainty as to what statutory limitations will be applicable to a claim for damages. *See Sea–Land Serv. Inc. v. Lozen Int'l, LLC,* 285 F.3d 808, 817 (9th Cir. 2002).

To resolve this ambiguity, we move to the second stage of statutory analysis, that is, whether legislative history can clarify the intended meaning of the text. *See Davidson,* 246 F.3d at 1246. Although legislative history on COGSA is scant, it is useful to reconcile the contradictions we face here. The limitation in section 1303(4) regarding the Pomerene Act was offered as an amendment to COGSA. The Senate Committee Report accompanying the bill divulges the following:

The foregoing amendment is intended to preserve in effect the provisions of the Pomerene Act which hold a carrier liable for receipt of goods signed for by its representatives even though they may not actually have been received, this provision of the Pomerene Act having been found necessary to prevent abuses that were being practiced with damage resulting due to the negotiable character of the bill of lading.

. . .

Prior to the enactment of the Pomerene Act a number of cases had arisen in which shippers had induced representatives of common carriers to sign bills of lading receipting for illustration for a certain number of bales of cotton, on the shipper's assurance that the cotton would later be delivered to the carrier. The shipper would then dispose of the bill of lading through the usual discounting procedure.... The courts held the fact that the goods had not actually been received to be an adequate defense to relieve the common carrier of liability. This loophole led to frauds on a large scale until the Pomerene Act finally made them impossible.... All interests concerned appear to agree upon the importance of preserving this effect of the Pomerene Act.

Senate Comm. on Commerce, Carriage of Goods by Sea Act, S.Rep. No. 74–742, at 1–2 (1935), *reprinted in* 1 Michael F. Sturley, Ed., *The Legislative History of The Carriage of Goods by Sea Act And The Travaux Preparatoires of The Hague Rules* 531, 532 (1990).

This glance into the history of the bill sufficiently explains what Congress contemplated when it added the proviso regarding the Pomerene Act. It was meant to preserve a specific provision of the Act that makes a carrier liable for damages caused by "nonreceipt by the carrier of any part of the goods by the date shown in the bill or by failure of the goods to correspond with the description contained in the bill." 49 U.S.C. § 80113(a). This mandate has remained a strong component of the law to determine a carrier's liability for damaged goods, even when the carrier claims that it never received the goods reflected in the bill of lading, or where it claims that the bill of lading misdescribed the goods. *See Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628, 632 n. 8 (9th Cir.1974); 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 10–12 (3d Ed.2001).

Although Congress could have been more clear when it drafted the proviso, I believe that the legislative history adequately resolves the conflict between the two statutes. What was on Congress' mind was the preservation of the validity of the terms contained in a bill of lading, regardless of their accuracy. There is no mention of keeping the Pomerene Act free of COGSA's statute of limitations or any of the other defenses for which it provides. *See, e.g.,* 46 U.S.C. app. § 1304(2)(a)-(q).

Therefore, from my perspective, the inquiry ends here. Bypassing the route of weighing what policy we deem best, we can arrive at the conclusion that COGSA's one year statute of limitations does apply to an action brought under the Pomerene

Act, by embarking on the route that rules of statutory construction direct.